AO 91 (Rev. 11/11) Criminal Complaint AUSA Kirsten Moran (312) 722-2291

FILED
3/24/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JULIAN TORRES

CASE NUMBER: 26 CR 119

# CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about March 23, 2026, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 922(o) | Possession of a machinegun |

This criminal complaint is based upon these facts:

 X   Continued on the attached sheet.

KARL FREDRIKSEN
Special Agent, Federal Bureau of Investigation (FBI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: March 24, 2026

*Judge's signature*

City and state: Chicago, Illinois

MARIA VALDEZ, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## **AFFIDAVIT**

I, KARL FREDRIKSEN, being duly sworn, state as follows:

1.       I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been so employed for approximately 4 years.  My current responsibilities include the investigation of violent crimes, including, among others, carjacking, violent crimes in aid of racketeering activity, illegal firearms trafficking, and the apprehension of violent fugitives.

2.       This affidavit is submitted in support of a criminal complaint alleging that Julian TORRES has violated Title 18, United States Code, Section 922(o), possession of a machinegun.  Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging TORRES with possession of a machinegun, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3.       This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents and from persons with knowledge regarding relevant facts.

## I.    Search Warrant at the Subject Premises on March 23, 2026

4.    On March 18, 2026, Magistrate Judge Holleb-Hotaling signed a search warrant authorizing the search of the first-floor apartment and basement at 6825 S. Claremont Avenue, Apartment 1 in Chicago, Illinois (the "**Subject Premises**"). On March 23, 2026, the FBI executed a federal search warrant of the **Subject Premises.**

5.    6825 S. Claremont Avenue is a single-family home split up into a first-floor apartment with a basement (the "**Subject Premises**"), and a second-floor apartment. As detailed further below, TORRES and OSORIO reside in the **Subject Premises.** TORRES's extended family resides in the second-floor apartment.

6.    The first-floor apartment of the **Subject Premises** has three bedrooms as you enter the home: one on the right side of the house (Bedroom 1) and two on the left side of the house: Bedroom 2 followed by Bedroom 3.

7.    I know Julian TORRES resides at the **Subject Premises** based on the following information:

    a.    Illinois Secretary of State (ILSOS) records list the **Subject Premises** as the address on TORRES's state ID, last updated in September of 2024.

    b.    On March 10, 2026, the Chicago Police Department arrested TORRES for obstruction during a traffic stop, during which he provided a false name and address. In the CPD Pretrial Release Conditions, which TORRES signed, his address is listed as the **Subject Premises**.

c. Law enforcement conducted surveillance on March 18 through March 23, 2026. Law enforcement observed TORRES and OSORIO entering and exiting 6825 S. Claremont Avenue unrestricted throughout the day and night, as well as staying overnight.

8. After law enforcement knocked and announced at the **Subject Premises** on March 23, 2026, OSORIO and TORRES did not exit the first-floor apartment.[1] The occupants of the second-floor apartment, including Individual 1, Individual 2, Individual 3, and a juvenile male exited the second floor of the residence.

9. Individual 1, who resides on the second floor and identified herself as Torres' relative, stated that TORRES lives in Bedroom 3 and that one of TORRES's friends lives in Bedroom 2. Bedroom 1 did not appear to be occupied.

10. I believe TORRES resides in Bedroom 3 based on the following:

a. A cellular telephone was located on the bed of Bedroom 3, that, on the notifications screen, showed texts from "Belen" (whom I believe to be the mother of TORRES's child based on the search of TORRES' phone detailed below) and TORRES's mother, as recently as approximately 2:00 a.m. on March 23, 2026.

b. In a wallet on the desk, a social security card listing the name of "JULIAN TORRES"

---

[1] Upon knocking and announcing, a 16-year-old minor female exited 6825 S. Claremont Avenue and told law enforcement that she had run away, was staying with "Smokey", who she met on Facebook, in the first-floor apartment and that she did not see anyone when she woke up and came outside.

c.    In the same wallet, Blue Cross Blue Shield health insurance card listing the name of "JULIAN TORRES"

d.    Clothing consistent in size with TORRES' stature and seen by surveilling agents on March 19, 20, and 21 worn by TORRES.

e.    Prescription pill bottles with TORRES' name affixed to the label.

f.    Following his later detention (detailed further below), TORRES requested that law enforcement retrieve articles of his clothing from Bedroom 3.

11.    In searching Bedroom 3, law enforcement recovered at least 17 polymer machine gun conversion devices (MCDs) of various styles in a plastic bag at the foot of the bed, contained within a duffle bag. Based on my training and experience, I know the devices can be affixed to the back of a Glock handgun or inserted into an AR-15 style rifle and allow the firearm to be converted from semi-automatic to fully-automatic.[2]

12.    In addition, the following non-exhaustive list of items were located in Bedroom 3:

---

[2] The National Firearms Act (NFA), 26 U.S.C.§5845(b), defines "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."

    a.    Taurus GX2 handgun

    b.    HK handgun

    c.    Glock handgun

    d.    Smith and Wesson M&P handgun

    e.    Assorted ammunition

    f.    Assorted firearm accessories

    g.    One clear plastic bag containing approximately 30g worth of green pills which field-tested positive for methamphetamine.[3]

13.    After clearing both the first and second floor apartments, law enforcement ultimately found TORRES and OSORIO hiding in the second-floor attic. I believe that after law enforcement knocked and announced their presence, TORRES and OSORIO fled from their rooms on the first floor and hid in the second-floor attic.

14.    Bedroom 2 contained items belonging to OSORIO, including:

    a.    Clothing consistent in size with OSORIO's stature and seen by surveilling agents worn by OSORIO.

    b.    Cook County Probation documents addressed to OSORIO.

    c.    A pair of Apple AirPods with 'Brittle' engraved on the case. Based on information gathered during the course of the investigation, I am aware that 'Brittle' is a nickname for OSORIO.

    d.    Lease documentation for a Jaguar SUV addressed to OSORIO.

    e.    IRS documents addressed to OSORIO.

---

[3] During a post-*Miranda* interview, Torres denied ownership of the pills.

## II.    Torres' Knowledge of Machineguns

15.    During the post-*Miranda* interview of TORRES, TORRES stated that he is familiar with switches, they make firearms go "brrrpp" and, when installed, make the firearm "not semi-automatic." From my training and experience, I believe the noise he made ("brrrpp"), to be referring to the noise that a firearm with a switch makes when it is fired.

16.    TORRES also stated that he is aware that a firearm with a switch is "not semi", which I believe refers to the firearm being fully automatic, as opposed to semi-automatic.

17.    In addition to TORRES's statements in his post-*Miranda* interview, I believe that TORRES knows the functionality of switches based on the numerous text messages recovered from his cellular telephone in which he references switches, needing to purchase a switch, hearing a switch go off, and selling a switch.

18.    Specifically, on March 10, 2026, the Chicago Police Department arrested TORRES and seized two cellular telephones from his person. Pursuant to a state search warrant, the following messages were retrieved from his phone:

a.    In a text message conversation between TORRES and INDIVIDUAL V on March 19, 2025, the following exchange about TORRES wanting to purchase a switch occurs:

TORRES: If I send bread can u flip it?
INDIVIDUAL V: [sends photo]
TORRES: Or na
INDIVIDUAL V: Wym
TORRES: I needa buy a switch
TORRES: Rn

INDIVIDUAL V: Idk lwk
INDIVIDUAL V: Like make more money off it?
INDIVIDUAL V: Or wym
TORRES: Shii I'm tryna flip my bread en
TORRES: Rn
TORRES: I only got $50
INDIVIDUAL V: Ahh smh
TORRES: I need $100 to buy a switch

Based on the text messages described above, my knowledge of the investigation and my training and experience, TORRES was conveying to INDIVIDUAL V that he wanted to buy a switch but that he needed money to do so. "Bread" is common slang for money.

        b.    In a text message conversation between TORRES and INDIVIDUAL B-2 on November 15, 2025, TORRES refers to hearing switches go off and "slap[ping] a switch on" a Glock. The following exchange occurs:

TORRES: C'mon let's match on piped
TORRES: Pipes[4]
INDIVIDUAL B-2: Can't rn D
TORRES: [emoji][emoji][emoji] after I heard em switch's go off we definitely
TORRES: Needa get right
INDIVIDUAL B-2: Got Christmas coming up and shit
TORRES: Truuu
INDIVIDUAL B-2: And my daughters birthday on the 2nd
TORRES: Ima just buy a Glock n slap my switch on it
TORRES: But for sure gotta [slide emoji] back onb
INDIVIDUAL B-2: I get my stick[5] inn couple days
INDIVIDUAL B-2: For my 20[6]
TORRES: Onb

---

[4] Based on my training and experience, I know the term "pipes" to be slang for firearms.

[5] Based on my training and experience, I know the term "stick" refers to an extended magazine.

[6] Based on my training and experience, I know the term "20" to refer to a Glock model 20.

TORRES: Need dat
INDIVIDUAL B-2: I'll slap a button that bitch on bro
TORRES: Onb
TORRES: We can find you one too

Based on the text messages described above, my knowledge of the investigation and my training and experience, TORRES was conveying to INDIVIDUAL B-2 that he wanted to purchase matching firearms. TORRES writes that he heard switches go off, referring to the audible difference between semi-automatic fire and fully automatic fire. TORRES later conveys that he is going to purchase a Glock firearm and put a switch on it. When INDIVIDUAL B-2 tells TORRES that he is planning to "slap a button", I believe him to be referring to adding a switch to a firearm, and TORRES responds that he can find one for INDIVIDUAL B-2.

c.     In a text message conversation between TORRES and a contact listed as Wooooskkkiiiii31 on December 28, 2025, TORRES refers to selling a switch, and the following exchange occurs:

TORRES: You can sell my switch for like 250-300
TORRES: Or na
WOOOOSKKKIIIII31: Just the button[7] rt? Wah color
TORRES: Yeah button only n black says Glocks 3 piece
WOOOOSKKKIIIII31: Prolly give me a bit
TORRES: Lmkk

Based on the text messages described above, my knowledge of the investigation and my training and experience, TORRES was asking whether he could have "Wooooskkkiiiii31"'s assistance with selling a switch for $250-$300.

---

[7] Based on my training and experience, I know the term "button" to refer to a switch.

d.     In a text message conversation between TORRES and a contact listed as 3100Brittle on December 28, 2025, TORRES refers to selling a switch (which he refers to as a "button"), and the following exchange occurs:

TORRES: Think can sell da button for like 250?
3100BRITTLE: not me nah
3100BRITTLE: like 150-2

Based on the text messages described above, my knowledge of the investigation and my training and experience, TORRES reached out to "3100Brittle" to ask whether TORRES would be able to sell a "button", which I know to be slang for a switch, for $250. "3100Brittle" responds and tells TORRES that he believes the switch would go for less than that, approximately $150-$200.

### III. CONCLUSION

19. Based on the foregoing facts, I respectfully submit there is probable cause to believe that JULIAN TORRES has committed the offense of unlawfully possessing a machinegun, in violation of Title 18, United States Code, Section 922(o).

FURTHER AFFIANT SAYETH NOT.

KARL FREDRIKSEN
Special Agent, Federal Bureau of Investigation

SWORN TO AND AFFIRMED by telephone March 24, 2026.

Honorable MARIA VALDEZ
United States Magistrate Judge

10